## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY RAUL, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AMTRUST FINANCIAL SERVICES, INC., BARRY ZYSKIND, GEORGE KARFUNKEL, LEAH KARFUNKEL, DONALD T. DECARLO, ABRAHAM GULKOWITZ, SUSAN C. FISCH, RAUL RIVERA, and MARK SEROCK,<br><br>　　　　　Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by AmTrust Financial Services, Inc. ("AmTrust" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on AmTrust's website concerning the Company's public statements; and (d) review of other publicly available information concerning AmTrust and the Defendants

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public shareholders of AmTrust against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company in a cash transaction with Evergreen Parent, L.P. ("Evergreen" or "Parent") (the "Proposed Transaction").

2.     On March 1, 2018, AmTrust announced that the Company had entered into an Agreement and Plan of Merger (the "Merger Agreement" or "the Proposed Transaction") with Evergreen, a Delaware limited partnership owned by Trident VII, L.P. and its affiliated funds ("Trident"), K-Z LLC, Defendant Barry D. Zyskind, Chairman and CEO of the Company, George Karfunkel and Leah Karfunkel (such individuals, collectively, the "Karfunkel Family" or the "Controlling Shareholders"), and Evergreen Merger Sub, Inc. ("Merger Sub"), pursuant to which Evergreen will acquire all of the outstanding common shares, par value $0.01 per share (the "Common Stock"), of the Company that are not currently owned or controlled by the Karfunkel Family and its affiliates and certain related parties.  The Karfunkel Family and its affiliates and certain related parties currently own or control approximately 55% of the outstanding shares of Common Stock of the Company.

3.     The Merger Agreement provides for the merger of Merger Sub with and into the Company, with the Company surviving the merger as a subsidiary of Evergreen (the "Merger"). Pursuant to the transactions contemplated by the Merger Agreement, each outstanding share of Common Stock of the Company (other than shares owned by the Company, any wholly-owned subsidiary of the Company, Merger Sub, Parent, or holders who have properly exercised

dissenters' rights under Delaware law) will be converted into the right to receive $13.50 per share of Common Stock in cash, without interest and less any required withholding taxes (the "Merger Consideration").

4.    The Proposed Transaction also contains restrictive deal protection devices that preclude the defendants from being able to adequately shop the Company in the best interests of the shareholders.  The deal protection devices include: (i) a "no-shop" provision that restricts the Company's ability to solicit alternative acquisition proposals for third parties; and (ii) a termination fee of $33 million that AmTrust must pay to Evergreen.

5.    On April 9, 2018 the Company filed with the SEC an incomplete and misleading Proxy Statement (the "Proxy Statement") in connection with the Proposed Transaction.  The Proxy Statement omits material information regarding the Proposed Transaction.  Accordingly, Plaintiff alleges that Defendants have violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 in connection with the Proxy Statement.

6.    As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.    This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the

exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Further, the Company's principal executive offices are located in this District.

## THE PARTIES

10.      Plaintiff has been the owner of the common stock of AmTrust since prior to the transaction herein complained of and continuously to date.

11.      Defendant AmTrust is a Delaware corporation with its principal executive offices located at 59 Maiden Lane, 43rd Floor, New York, NY 10038.  The Company's stock trades on the NASDAQ under the ticker "AFSI."

12.      Defendant Barry Zyskind ("Zyskind") has been a member of the Board since 1998 and Chairman of the Board since May 2016.  Defendant Zyskind has also been the Company's CEO and President since 2000.  As of March 31, 2018, Defendant Zyskind beneficially owns 44,864,556 shares of the Company's common stock, representing 22.9% of the Company's issued and outstanding shares.  In his role as the Company's CEO, President, and director for fiscal year 2017, Defendant Zyskind received $1,980,104 in total compensation.[1]

13.      Defendant George Karfunkel ("G. Karfunkel") has been a member of the Board since 1998.  Defendant G. Karfunkel is a founding stockholder of the Company.  As of March 31, 2018, Defendant G. Karfunkel beneficially owns 32,438,408 shares of the Company's common stock, representing 16.5% of the Company's issued and outstanding shares.  Defendant G. Karfunkel is the brother-in-law of Leah Karfunkel.

---

[1] Includes salary, bonus, stock awards and all other compensation.

14.     Defendant Leah Karfunkel ("L. Karfunkel") has been a member of the Board since May 2016.  As of March 31, 2018, Defendant L. Karfunkel beneficially owns 22,101,025 shares of the Company's common stock, representing 11.3% of the Company's issued and outstanding shares.

15.     Defendant Donald T. Decarlo ("Decarlo") has been a member of the Board since 2006.  Defendant DeCarlo is a member of the Boards Audit Committee, Nominating and Corporate Governance Committee, and Chair of the Compensation Committee.

16.     Defendant Abraham Gulkowitz ("Gulkowitz") has been a member of the Board since 2006.  Defendant Gulkowitz is a member of the Company's Nominating and Corporate Governance Committee, and Chair of the Audit Committee.

17.     Defendant Susan C. Fisch ("Fisch") has been a member of the Board since 2010. Defendant Fisch is a member of the Company's Audit Committee, Nominating and Corporate Governance Committee, and Compensation Committee.

18.     Defendant Raul Rivera ("Rivera") has been a member of the Board since August 2016.  Defendant Rivera is a member of the Company's Compensation Committee.

19.     Defendant Mark Serock ("Serock") has been a member of the Board since March 2018.

20.     Defendants Zyskind, G. Karfunkel, L. Karfunkel, Decarlo, Fisch, Gulkowitz, Rivera, and Serock are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public stockholders of AmTrust (the "Class"). Excluded from the Class are

Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is properly maintainable as a class action because.

a.     The Class is so numerous that joinder of all members is impracticable. As of March 1, 2018, there were 196,091,789 shares of AmTrust common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of AmTrust will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

ii.     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy Statement.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class

would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

    f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

    g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

  23.  AmTrust is an insurance holding company incorporated in New Jersey, with its principal executive offices located in New York.

  24.  The Company provides specialty property and casualty insurance products, including, but not limited to workers' compensation, commercial automobile, general liability, and extended service and warranty coverage through its primary insurance subsidiaries rated "A" by A.M. Best, a U.S.-based rating agency that focuses on the insurance industry.

### The Company Announces the Proposed Transaction

  25.  On March 1, 2018, AmTrust issued a press release announcing that that the Company had entered into the Merger Agreement.  Pursuant to the terms of the Merger Agreement, AmTrust will be acquired by Evergreen, an entity formed by private equity funds managed by Stone Point, together with the Karfunkel Family.  The public shareholders of AmTrust will receive $13.50 per share in cash upon consummation of the Proposed Transaction.

  26.  The March 1, 2018 press release stated, in pertinent part:

**NEW YORK, March 01, 2018 (GLOBE NEWSWIRE) -- AmTrust Financial Services, Inc.** (Nasdaq:AFSI) ("AmTrust" or the "Company") announced today that it has entered into a definitive agreement with Evergreen Parent, L.P., an entity formed by private equity funds managed by Stone Point Capital LLC ("Stone Point"), together with Barry D. Zyskind, Chairman and CEO of AmTrust, George Karfunkel and Leah Karfunkel (collectively, the "Karfunkel-Zyskind Family"), in which Evergreen Parent will acquire the approximately 45% of the Company's issued and outstanding common shares that the Karfunkel-Zyskind Family and certain of its affiliates and related parties do not presently own or control.  The transaction values the fully diluted equity of the Company at approximately $2.7 billion, excluding the Company's outstanding preferred stock.

Under the terms of the proposed merger, AmTrust common shareholders who are not affiliated with the Karfunkel-Zyskind Family (the "Public Shareholders") will receive $13.50 in cash for each share of AmTrust common stock they hold.  This represents a premium of 33% to the Company's unaffected closing common stock price on January 9, 2018, the last trading day before Stone Point and the Karfunkel-Zyskind Family announced their proposal to acquire all of the outstanding common shares of AmTrust that the Karfunkel-Zyskind Family did not already own or control.  The Karfunkel-Zyskind Family and certain of its affiliates and related parties will rollover their shares in the Company for interests in Evergreen Parent.  Each share of the Company's currently outstanding preferred stock will remain outstanding and it is expected that they will continue to be listed on the New York Stock Exchange following the consummation of the transaction.

The proposed merger is anticipated to close in the second half of 2018, subject to satisfaction or waiver of the closing conditions, including approval by regulatory authorities and the Company's shareholders, including approval by a majority of the shares of the Company not owned or controlled by the Karfunkel-Zyskind Family, their children, senior management or their respective affiliates and certain related parties. The Company will file a Current Report on Form 8-K with the Securities and Exchange Commission which will more fully describe the terms and conditions of the proposed merger.

AmTrust's Board of Directors has unanimously approved the proposed merger based upon the unanimous recommendation of a Special Committee of the Board of Directors, which was composed of independent directors not affiliated with the Karfunkel-Zyskind Family and advised by its own financial and legal advisors. The Special Committee and the Board each recommend that the Company's Public Shareholders approve the merger and adopt the merger agreement.

## Background of the Proposed Transaction

27.    On November 9, 2017, the very day that the price of Company stock hit its historic all time low, Defendants claim that representatives from Stone Point contacted Defendant Zyskind, in order to inquire as to whether the Karfunkel Family would consider sponsoring a going private transaction of the Company in partnership with Stone Point.

28.    Defendant Zyskind advised the Board of Stone Point's interest at meeting of the Board on November 16, 2017, where the Board determined to permit Stone Point to conduct due diligence in connection with a potential going private transaction.

29.    On November 17, 2017, Stone Point entered into a confidentiality agreement with the Company and thereafter commenced its due diligence investigation.

30.    On December 27, 2017, Defendant Zyskind indicated to the Board that, at the request of certain representatives of Stone Point, Defendant Zyskind was seeking the Board's approval to permit Stone Point to discuss a potential transaction with the Karfunkel Family, including the possible submission of a joint indication of interest to the Board regarding a potential acquisition of the outstanding shares of common stock of the Company not held or controlled by the Karfunkel Family and its affiliates and certain related parties.

31.    On December 28, 2017, the Board held a conference call to discuss the formation of a special committee to consider any indication of interest that may be submitted by Stone Point and the Karfunkel Family.  The Board designated the Special Committee and appointed as its members Defendants DeCarlo, Fisch, Gulkowitz and Rivera, with the expectation that the Special Committee would engage an independent financial advisor and independent counsel to assist the Special Committee and, to evaluate any such proposal.

32.     On January 2, 2018, the Special Committee interviewed several law firms, including Willkie Farr & Gallagher LLP ("Wilkie Farr"), to consider the retention of a legal advisor to the Special Committee. After discussion, the Special Committee retained Willkie Farr to represent the Special Committee.

33.     On January 4, 2018, the Special Committee interviewed representatives of several potential financial advisors to the Special Committee, including Deutsche Bank Securities, Inc. ("Deutsche Bank"). In early January, representatives of Willkie Farr met representatives of the Company to discuss the legal due diligence process in respect of the potential proposal.

34.     On January 8, 2018, the Special Committee met and resolved to permit funds managed by Stone Point and the Karfunkel Family to make an acquisition proposal to the Board. Willkie Farr reviewed with the Special Committee the responses to independence questionnaires (which had been circulated to the Special Committee by Willkie Farr) submitted by Defendants DeCarlo, Fisch, Gulkowitz and Rivera.    Following discussion, the Special Committee determined that each was independent with respect to a potential proposal from funds managed by Stone Point and the Karfunkel Family.

35.     The Special Committee instructed Willkie Farr to deliver to the Company proposed resolutions of the Board further authorizing the Special Committee to consider any such proposal and enumerating its general and specific powers in that regard for approval and ratification by the full Board.

36.     On January 9, 2018, the Board adopted the resolutions proposed by the Special Committee.    Among other things, the resolutions ratified the appointment of Defendants DeCarlo, Fisch, Gulkowitz and Rivera as members of the Special Committee, including the appointment of DeCarlo as chairman of the Special Committee, and authorized the Special

Committee to evaluate a proposal from the Karfunkel Family and any other bidder affiliated or working with the Karfunkel Family and, if the Special Committee were to deem it appropriate and advisable, to negotiate and make recommendations to the Board with respect to such a proposal and a potential transaction with the Karfunkel Family and any such other bidder. In addition, the resolutions authorized the Special Committee to consult with and advise management, on behalf of the Board, in connection with discussions and negotiations concerning potential terms and conditions of such a proposal, consider such other matters as may be requested by the Board, make any recommendations to the Board concerning such a proposal that the Special Committee deemed appropriate, and determine to elect to pursue or not to pursue such a proposal.

37.    On January 9, 2018, the Special Committee met with Willkie Farr to discuss the results of the Special Committee's interviews of potential financial advisors. After discussion, the Special Committee determined to retain Deutsche Bank as its financial advisor.

38.    In the late afternoon of January 9, 2018, Trident Pine and the Karfunkel Family submitted to the Board a letter (the "Proposal Letter") containing a proposal to acquire all of the shares of Common Stock that were not then owned or controlled by the Karfunkel Family and its affiliates and certain related parties at a purchase price of $12.25 per share in cash (the "Initial Proposal").

39.    On January 12, 2018, management of the Company provided to the Special Committee and Deutsche Bank a copy of the Company's financial projections which had been prepared by management in connection with management's annual budgeting process. These projections (the "Budget Projections") had also previously been delivered to the Board by Company management on December 20, 2017.

40.     On January 19, 2018, the Company issued a press release announcing that the Special Committee had engaged Deutsche Bank as its financial advisor in connection with the potential transaction. The press release also noted that the Company had engaged Bank of America Merrill Lynch ("BofA Merrill Lynch") as its financial advisor.

41.     On January 24, 2018, the Special Committee met with representatives of its financial and legal advisors and received a general status update, including…."various pre-existing derivative and class action shareholder lawsuits and other proceedings involving the Company, including the shareholder derivative lawsuit commenced in April 2015 on behalf of the Company by Cambridge Retirement System. Among other issues, the Special Committee discussed with its legal advisors' analysis concerning the value of the 2017 Derivative Actions asserted on behalf of the Company that, if successful, could result in judgments in the Company's favor and are, therefore, assets of the Company to be considered by the Special Committee as part of its review of a potential sale of the Company."

42.     Also on January 24, 2018, members of the Company's management provided the Special Committee and representatives of Deutsche Bank with Company management's updated estimates of the future financial performance of the Company (the "Case 1 Projections"), reflecting certain adjustments to the Budget Projections as a result of the Tax Cuts and Jobs Act of 2017, recent transactions involving the Company, and updated estimates of the Company's operating results for the fourth quarter of 2017 and the full year 2017.

43.     On January 29, 2018, the Special Committee met with its financial and legal advisors, noting that the Case 1 Projections were inconsistent with the financial analysts' consensus estimates for the Company and the Company's peer group. The Special Committee

members also discussed the fact that the Case 1 Projections did not appear to reflect certain adverse industry trends and Company issues.

44.    On January 31, 2018, upon the request of the Special Committee, the Company's management provided the Special Committee and representatives of Deutsche Bank with Company management's alternate case of the future financial performance of the Company (the "Case 2 Projections") reflecting alternate estimates for gross written premiums, combined ratio, underwriting profits and operating earnings.  The Case 2 Projections had been prepared as requested by the Special Committee as an alternate case reflecting a more challenging operating environment as well as the reputational and business pressures faced by the Company and slower growth.  The result was a lower valuation for the Company.

45.    On February 1, 2018, the Special Committee met with Willkie Farr to receive a review and analysis by Willkie Farr and the Special Committee's Delaware counsel, Richards Layton & Finger, P.A. ("Richards Layton"), concerning the valuation of the 2015 Derivative Action, and the 2017 Derivative Actions, asserted on the Company's behalf.

46.    Based upon the review and analysis by Willkie Farr and Richards Layton, the Special Committee estimated the present value of the derivative actions as an asset of the Company, to be "on the high end of an estimated range of $15 million to $25 million."

47.    On February 7, 2018, the Special Committee directed representatives of Deutsche Bank to deliver a counterproposal of $17.50 per share to Stone Point and the Karfunkel Family.

48.    On February 14, 2018, the Special Committee and representatives of its financial and legal advisors met with certain representatives of Stone Point and the Karfunkel Family, as well as their respective counsel.  Following discussion among the parties, representatives of Stone Point and the Karfunkel Family indicated that they expected to submit a revised proposal

within the range of $12.85 to $12.90 per share.  Later that day, an initial draft of the Merger Agreement relating to the potential transaction was circulated.

49.     On February 22, 2018, the Special Committee and its legal and financial advisors met to review draft Special Committee Case Projections.  Following discussion, at the direction of the Special Committee, representatives of Deutsche Bank delivered a revised counteroffer of $15.10 per share to representatives of Stone Point and the Karfunkel Family.  The following day, representatives of Stone Point and the Karfunkel Family contacted representatives of Deutsche Bank to communicate a revised "best and final" counteroffer of $13.00 per share.

50.     On February 26, 2018, the Special Committee was informed of a revised counteroffer by the Company of $14.00 to be communicated to Defendant Zyskind.  Following discussion with Stone Point, Trident Pine and the Karfunkel Family agreed on a "best and final" offer of $13.50 per share and Defendant Zyskind communicated this offer to the Special Committee.

51.     On February 28, 2018, the Special Committee again met with representatives of its financial and legal advisors to consider the proposed transaction, including the Merger Agreement and related ancillary agreements.   After discussion, the Special Committee unanimously determined that the Merger Agreement, the merger and the other transactions contemplated by the Merger Agreement were fair, advisable and in the best interests of the Company and the Public Stockholders and recommended that the Board approve the merger, the Merger Agreement and the related ancillary agreements and the transactions contemplated thereby.

52.     Following the Special Committee meeting, the full Board, based in part on the recommendation of the Special Committee, unanimously approved the merger, the Merger

Agreement and the related ancillary agreements and the transactions contemplated thereby. The following day, on March 1, 2018, the Company issued a press release announcing the entry into the Merger Agreement.

### The Proposed Transaction is Unfair to Shareholders

53.     The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

54.     Throughout negotiations, Defendants took actions that were to the detriment of the Company's shareholders. For instance, despite the lengthy negotiation process, consisting of several offers that the Board deemed inadequate, the Board made no attempt during that period to seek a superior offer from a suitor other than Evergreen.

55.     Moreover, when entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for AmTrust will be forthcoming.

56.     Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a "no-shop" provision that restricts the Company's ability to solicit alternative acquisition proposals for third parties; and (ii) a termination fee of $33 million that AmTrust must pay to Evergreen in cash, essentially requiring an unsolicited bidder to pay a premium to provide a superior offer to the Company and its shareholders.

57.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of AmTrust. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information

necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

58.    On April 9, 2018, the Company filed the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

59.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.    However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction.

60.    Specifically, the Proxy Statement contains materially incomplete and/or misleading information regarding, among others: (i) information regarding the Company's financial projections; (ii) potential conflicts of interest of the financial advisor to the Special Committee, as well as the Company's financial advisor; (iii) potential conflicts of interest of the Company's executive officers and Board members; (iv) interests of management and the Special Committee; and (v) the process leading up the Proposed Transaction.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding AmTrust's Financial Projections

61.    First, the Proxy Statement fails to provide material information concerning the Company's financial projections.  Specifically, while the Proxy Statement discloses the Special Committee Case Projections (Case 1, Case 2, and Downside Projections), the Proxy Statement

fails to disclose the Budget Projections prepared by management in connection with management's annual budgeting process.

62.     Disclosure of the above information is material, as it would provide the Company's shareholders with information regarding the Company's potential future financial performance, allowing shareholders to be fully informed when deciding whether to vote in favor or against the Proposed Transaction.

**Material False and Misleading Statements or Material Misrepresentations
or Omissions Regarding Potential Conflicts of Interest of the Financial Advisors**

63.     Next, the Proxy Statement omits material information concerning potential conflicts of interest of Deutsche Bank and BofA Merrill Lynch.  The Proxy Statement provides, in pertinent part:

> One or more members of the DB [Deutsche Bank] Group have, from time to time, provided investment banking, commercial banking (including extension of credit) and other financial services to Stone Point, affiliates of which are equity holders of Parent, and its affiliates and portfolio companies for which they have received, and in the future may receive, compensation, including acting as sole bookrunner on a $22 million follow-on offering of shares for Eagle Point Credit Company, Inc., a portfolio company of Stone Point, in May 2016. One or more members of the DB Group have, from time to time, provided commercial banking (including extension of credit) and other financial services to the Company and its affiliates for which they have received, and in the future may receive, compensation, including serving as a counterparty to a Dutch trade finance facility of National Borge, a subsidiary of the Company, and certain affiliates in December 2017.

Proxy Statement, at 43.

64.     Despite noting that Deutsche Bank has provided services for the Company, the Proxy Statement does not disclose the amount of compensation received in rendering such services.

65. In addition, the Proxy Statement does not disclose the time and nature of discussions BofA Merrill Lynch's affiliates had with the Controlling Shareholders regarding debt financing for the Proposed Transaction.

66. Lastly, the Proxy Statement does not disclose: (i) the nature of the participation in coverage activities regarding BofA Merrill Lynch's relationship with Stone Point and affiliates and investees of the Controlling Shareholders by the senior member of the BofA Merrill Lynch deal team advising the Company in connection with the Proposed Transaction; (ii) the nature of said senior member's relationship with Stone Point; and (iii) whether Defendants considered and evaluated the potential conflicts of interest mentioned.

67. Disclosure of the above information concerning potential conflicts of an investment banker is material, as it is required for the Company's shareholders to cast a fully-informed vote on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Potential Conflicts
of Interest of the Company's Executive Officers and Board Members**

68. The Proxy Statement does not disclose material information regarding potential conflicts of interest of the Company's executive officers and Board members.

69. In particular, the Proxy Statement does not disclose the details of any employment related negotiations that occurred between Evergreen and the Company's executive officers and Board members.

70. Communications regarding post-transaction employment during the negotiation processes of the underlying transaction must be disclosed to stockholders, as this information is material for shareholders to understand potential conflicts of interest of management and the

members of the Board and whether they have motivations that would prevent them (as fiduciaries) from acting solely in the best interests of the Company's shareholders.

**Material Misrepresentations or Omissions Regarding**
**Interests of Management and the Special Committee in the Proposed Transaction**

71.    At the time of the negotiation of the Proposed Transaction there were three active shareholder derivative actions pending against the members of the Special Committee regarding (1) AmTrust's accounting manipulation resulting in the Company restating three years worth of financial statements,[2] and, (2) permitting ACP RE Ltd. ("ACP"), a private company solely owned by the Karfunkel family to usurp a corporate opportunity from AmTrust when it acquired Tower Group International, Ltd. ("Tower") after AmTrust had already performed due diligence on Tower and submitted an acquisition offer.

72.    Defendants have estimated the combined value of the 2015 Derivative Action and 2017 Derivative Action to be between $15 to $25 million: "the present value of a contingent litigation asset of the Company, based on the high end of an estimated range of $15 million to $25 million." Proxy Statement, at 47.

73.    The Company failed to disclose that as a result of the Proposed Transaction the members of the Special Committee would benefit by the extinguishment of derivative actions naming them as personal defendants, with an exposure of personal liability estimated by the Company to be in the $15 to $25 million range.

---

[2] The Company's financial misreporting resulting in the 2017 financial restatement arose from the long running, systemic practice of understating the Company's loss reserves, overstating its revenue and net income, and misrepresenting its loss reserve practices and financial results (which also resulted in securities fraud class actions against the Company and three ongoing government investigations).

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

74.    Finally, the Proxy Statement fails to disclose material information concerning the process leading up to the Proposed Transaction.

75.    The Proxy Statement does not disclose what sort of the discussions took place between the Company and strategic and financial sponsor parties in November and December 2017 regarding the potential of a going-private transaction, including the number of parties engaged in discussion, number of confidentiality agreements (and the terms of such agreements) entered into with such parties, and the terms of any expressions of interest in potential going-private transactions.

76.    The Company's failure to disclose the above material information renders the following sections of the Proxy Statement false and misleading: (i) Projected Financial Information; (ii) Recommendation of the Board of Directors; Fairness of the Merger; (iii) Opinion of Deutsche Bank; (iv) BofA Merrill Lynch; (v) Interests of Certain of the Company's Directors and Executive Officers in the Merger; (vi) Reasons for the Merger; Recommendation of the Special Committee and (vii) Background of the Merger.

77.    The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to tender their shares in favor of the Proposed Transaction without proper disclosures.   As such, shareholders are threatened irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

78.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

79.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

80.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

81.    The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

82.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

83.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

84.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

85.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

86.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

87.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

88.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

89.     The Individual Defendants acted as controlling persons of AmTrust within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of AmTrust, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

90.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

91.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

92.    In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

93.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

94.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

95.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 18, 2018

Respectfully submitted,

By: _____
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
Edward W. Miller
Email: edmilleresq@aol.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

**SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Tammy Raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in AFSI securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 05/18/2018

Signature

**Exhibit A**

My transactions in AmTrust Financial Services, Inc. (AFSI) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|----------|------|------|----------|------------------|-----------------|
| AFSI | 11/10/2017 | | P | 51 | $10.53 |